IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID JOSHUA BARTCH,

    Judgment Creditor,

v.      Civil No. 23-0101-BAH

MACKIE A. BARCH, *et al.*,

    Judgment Debtors.

## MEMORANDUM OPINION

After securing a judgment against Mackie A. Barch ("Debtor Barch") and Trellis Holdings, Maryland, Inc. ("Trellis," and, collectively, "Debtors") in the District Court for the District of Colorado in the amount of 6.4 million dollars, Judgment Creditor David Joshua Bartch ("Creditor") now seeks to enforce the judgment in this Court. ECFs 1, 3. Currently pending before the Court is Debtors' renewed motion for release of garnished property, ECF 91. Creditor filed a response in opposition, ECF 92, and Debtors filed a reply in support, ECF 94. The filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Debtors' Motion is **DENIED** without prejudice.

### I. BACKGROUND

In September 2022, after nearly four years of litigation, Judge R. Brooke Jackson of the United States District Court for the District of Colorado found that Debtors had breached a contract with Creditor and ordered 6.4 million dollars in damages against Debtors. ECF 1-1; *Bartch v.*

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

*Barch*, Civ. No. 18-03016, 2022 WL 4092689, at *6 (D. Colo. Sept. 7, 2022) (hereinafter "*Bartch I*"). Judge Jackson later amended the judgment to award post-judgment interest to Creditor. ECF 3-1; *Barch v. Barch*,[2] Civ. No. 18-03016, 2022 WL 16924003, at *4 (D. Colo. Nov. 14, 2022).[3] Creditor filed a registration of the District of Colorado's judgment in this Court on October 31, 2022, ECF 1, and filed the amended judgment awarding Creditor post-judgment interest on November 23, 2022, ECF 3.

At Creditor's request, the clerk issued several writs of garnishment in this case, including, as relevant here, to financial institution garnishees Wells Fargo, N.A. ("Wells Fargo"), and Morgan Stanley & Co., LLC ("Morgan Stanley"), regarding the property of Debtor Barch in the possession of the financial institutions. ECFs 18, 21. Garnishees Wells Fargo and Morgan Stanley answered that they respectively held, among other accounts, a joint checking account of Debtor Barch and his wife (the "joint account") and an inherited traditional individual retirement account that Debtor Bartch received upon the death of his uncle (the "inherited IRA"). ECF 31, at 1; ECF 38, at 1.

Debtor Barch swiftly filed motions for the release of both the joint account and the inherited IRA (the "original motions"). ECFs 35, 37. Creditor opposed the original motions, and after they were fully briefed, Judge Griggsby held a telephone hearing on the original motions. ECFs 83 and

---

[2] In some of the post-judgment proceedings in the Colorado case, the case name appears to have omitted the "t" in Mr. Bartch's name.

[3] Debtors have since filed multiple motions for reconsideration or relief from judgment, all of which have been denied. *Barch v. Barch*, Civ. No. 18-03016, 2024 WL 480625, at *1–4 (D. Colo. Feb. 1, 2024) (misspelling of party names in original) (denying motion to vacate under Federal Rules of Civil Procedure 60(b)(4)); *Barch v. Barch*, Civ. No. 18-03016, ECF 248 (D. Colo. July 7, 2023) (PACER) (misspelling of party names in original) (denying Debtors' motion for reconsideration). Debtors' appeal of the District of Colorado's judgment is pending before the Tenth Circuit. *Bartch v. Barch*, No. 24-2049 (10th Cir. filed Feb. 7, 2024).

87.[4] Judge Griggsby denied the original motions without prejudice.[5] ECF 89. The motion before the Court today is a renewed motion consolidating the requests for release of both the joint account and the inherited IRA. ECF 91.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 69, state law governs the procedure of court proceedings regarding the execution of a money judgment unless a federal statute applies. Thus, this Court applies Maryland state law here. Under Maryland Rule 2-645(i), a debtor may move to release garnished property at any point before judgment is entered. The Court will grant such a motion under specific circumstances, including where "the property is exempt from levy." Md. Rule 2-643(c). The debtor bears the burden of proving an exemption applies. *Johns Hopkins Hosp. v. Post*, 321 F. App'x 259, 263 (4th Cir. 2009).

## III. ANALYSIS

Debtor Barch claims that the joint account and the inherited IRA are both exempt from levy under Maryland law. ECF 91, at 1–2. Creditor argues that Debtor Barch has not met his burden to prove that the claimed exemptions apply. ECF 92-1, at 1–2. According to Debtor Barch, the inherited IRA is exempt under § 11-504 of the Courts and Judicial Proceedings ("CJP") Article of the Maryland Code. ECF 91, at 3–5. The joint account, Debtor Barch claims, is exempt under CJP § 11-603. ECF 91, at 5–6. The Court will address each of these claims in turn.

---

[4] Though the docket entry for ECF 87 states that the hearing was regarding Debtors' motion to vacate, the content of the hearing actually focused on Debtors' original motions, as reflected in the scheduling order at ECF 83.

[5] The original motions also included requests for the release of other garnished property, which were granted. ECF 89. The requests regarding the inherited IRA and the joint account, however, are the only ones that currently concern this Court, and both were denied without prejudice. *Id.*

### A. Debtor Barch has not demonstrated that the inherited IRA is exempt from levy.

Under Maryland law, "any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan qualified under . . . § 408 . . . shall be exempt from any and all claims of the creditors of the beneficiary or participant." CJP § 11-504(h)(1). An IRA is a qualified account under 26 U.S.C. § 408(a). The parties appear to agree that the inherited IRA is thus a qualified account for the purposes of the exemption. *See* ECF 37, at 2 (original motion for release of inherited IRA claiming exemption under CJP § 11-504(h)); ECF 91, at 3–5 (addressing how CJP § 11-504(h)(4) applies to the inherited IRA); ECF 92-1, at 8–10 (arguing only that an exception to the exemption in CJP § 11-504(h) should apply, not that the exemption itself does not apply to the inherited IRA). The Court, however, is not persuaded that an *inherited* IRA is exempt to the same extent as a standard IRA opened and maintained by a debtor.

The Court begins with the arguments in the filings. The parties' arguments center on a carve-out to the retirement account exemption: though retirement accounts are generally exempt from levy, distributions to retirement accounts that exceed the maximum allowable contribution to that account, or the amount deductible, are not. CJP § 11-504(h)(4). According to Creditor, Debtor Barch must show that (1) the contributions Debtor Barch himself made to the account after he inherited it were within the allowable limit; (2) the contributions the decedent made to the account before his death were within the allowable limit; and (3) the contributions the decedent made to any accounts that were rolled over into the account were within the allowable limits. ECF 92-1, at 8–10. Creditor argues that Debtor Barch did not meet this burden. *Id.* Debtor Barch asserts that he has demonstrated that he made no contributions to the account himself and that he need not demonstrate that the contributions made by the decedent fell within the allowable limits.

4

ECF 91, at 3–5. Alternatively, he argues that the decedent's contributions were permissible rollover contributions. *Id.*; ECF 94, at 2–5.

To discern what constitutes a permissible contribution to an IRA under the exemption, one must look to 26 U.S.C. § 408, which CJP § 11-504(h)(1) incorporates by reference. Under § 408, contributions are permissible up to a specified amount except in the case of certain rollover contributions. 26 U.S.C. § 408(a)(1). Inherited retirement accounts, however, "shall not be treated as an individual retirement account or annuity for purposes of determining whether any other amount is a rollover contribution." *Id.* § 408(d)(3)(c)(i)(II). It seems to reason, then, that there is a question as to whether an inherited IRA is indeed a qualified retirement account at all under § 408 for the purposes of the exemption laid out in CJP § 11-504(h), given that the incorporated statute limits the benefits and protections that a beneficiary of an inherited IRA account receives.

Useful in answering this question is the Supreme Court's decision in *Clark v. Rameker*, which held in no uncertain terms that "funds held in inherited IRAs are not 'retirement funds' within the meaning of [11 U.S.C.] § 522(b)(3)(C)'s bankruptcy exemption." 573 U.S. 122, 127 (2014). The statute the Court was interpreting in *Clark*, 11 U.S.C. § 522(b)(3)(C), allows Chapter 7 debtors under the federal Bankruptcy Code to exempt "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section . . . 408 . . . of the Internal Revenue Code of 1986." This language is strikingly similar to the language of the Maryland retirement accounts exemption, which applies to "retirement plan[s] qualified under . . . § 408." CJP § 11-504(h)(1).

In *Clark*, the Court held that the term "retirement funds" could not apply to an inherited IRA because an inherited IRA is fundamentally different from other retirement accounts in that it is not actually a tool to finance the retirement of the beneficiary who inherits it. 573 U.S. at 127–

28. Considering that the beneficiary of an inherited IRA is *required* to withdraw money from those accounts regardless of how close they are to retirement, is unable to contribute to the inherited IRA, and is able to withdraw the full balance of the inherited IRA at any time without any penalty, the Court found that "funds held in such accounts are not objectively set aside for the purpose of retirement" and therefore did not qualify as "retirement funds" for the purpose of the Bankruptcy Code exemption. *Id.* at 128.

This analysis applies with equal vigor here. It is clear from the legislative history of CJP § 11-504(h) that it was intended to protect *retirement* plans that are actually used to fund individuals' retirement. *See* ECF 94-3 (providing statement in favor of original passage of CJP § 11-504(h) stating that "[t]he purpose of this bill, is to protect all retirement plans so that the citizens of Maryland will not need state welfare to support themselves when they can no longer work"). As the Supreme Court explained, an inherited IRA, by its very nature, is no longer a retirement account. *Clark*, 573 U.S. at 127–28. Though this Court is aware of no precedent from Maryland courts weighing in on this issue, the legislative history of the exemption combined with the reasoning of the Supreme Court in *Clark* make clear that Debtor's inherited IRA account is not the type of "retirement account" that CJP § 11-504(h) was intended to protect.

Because the inherited IRA is not a qualified retirement account under CJP § 11-504(h), Debtor Barch has not met his burden to show that the exemption applies. Nevertheless, because the parties did not address this issue in their filings, the Court will deny the renewed motion for release of garnished property with respect to the inherited IRA without prejudice.

**B. Debtor Barch has not demonstrated that the joint account is exempt from levy.**

The second exemption at issue provides that, for accounts established before the entry of judgment against a debtor, "a garnishment against property held jointly by husband and wife, in a bank, trust company, credit union, savings bank, or savings and loan association or any of their

6

affiliates or subsidiaries is not valid unless both owners of the property are judgment debtors." CJP § 11-603(a). Debtor Barch claims that this exemption applies to the joint account. ECF 35, at 2 (original motion for release of joint account claiming exemption under CJP § 11-603); ECF 91, at 5–6 (arguing joint account should be exempt).

Creditor points out, however, that this protection does not extend to funds that are fraudulently conveyed into the account. *See* ECF 92-1 (citing ECF 48, at 3); *see Andree v. Equitable Trust Co.*, 420 A.2d 1263, 1264 (Md. App. 1980) (noting that the protection of spousal accounts only applies "in the absence of fraudulent conduct by a husband and a wife"); *Md. Nat. Bank v. Pearce*, 620 A.2d 941, 952 (Md. App. 1993) (recognizing that the exception for fraudulent conveyances survived the codification of the common law exception for marital joint property into CJP § 11-603(h) but declining to find fraud in the current case); *see also Merrill Lynch Fin. Servs., Inc. v. Targan*, Civ. No. AW-05-1251, 2007 WL 9747368, at *3 (D. Md. Apr. 19, 2007), *vacated and remanded on other grounds*, 276 F. App'x 309 (4th Cir. 2008) (recognizing that Section 11-603 would not protect "fraudulent conveyance[s] due to insolvency").

Under Maryland law, "[e]very conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." ECF 92-1, at 5; Md. Code Ann., Commercial Law § 15-204. As Creditor highlights, "[Debtor] Barch's insolvency is not in dispute." ECF 92-1, at 5 (citing ECF 48-2, which provides Debtor Barch's responses to interrogatories in *Bartch I*, demonstrating that Debtor Barch's liabilities exceed his assets). Thus, Creditor argues, if Debtor Barch's transfers into the joint account were without fair consideration, those transfers were fraudulent, and the account should not be exempt. ECF 92-1, at 5–6.

7

Creditor argued in his opposition to the original motions that, in the absence of Maryland precedent on this point, this Court should apply the Third Circuit's interpretation of a Pennsylvania law analogous to CJP § 11-603 in determining whether Debtor Barch's transfers into the joint account were in exchange for adequate consideration. ECF 48, at 3–5. Under the Third Circuit's standard, transfers by an insolvent debtor of assets that would otherwise be reachable by creditors into a joint account are presumed fraudulent unless the debtor shows that the funds were spent on "reasonable and necessary household expenses." *In re Titus*, 916 F.3d 293, 301 (3d Cir. 2019) (citation omitted); *see also* ECF 48, at 4–5 (citing *In re Titus*, 916 F.3d at 300); ECF 92-1, at 5–6 (citing *In re Titus*, 916 F.3d at 301–02). Debtor Barch does not appear to contest the application of the Third Circuit's process outlined in *In re Titus* to this case. *See* ECF 91, at 5–6 (acknowledging the framework of *In re Titus*, making no argument that it should not apply, and arguing that the expenditures from the joint account were necessary household expenses). As such, the Court also sees no reason to refrain from applying this standard here.

At the hearing on the original motions, Judge Griggsby stated that Debtor Barch did not provide enough information on the expenditures from the Joint Account to rebut the presumption of fraudulent transfers and denied the original motion without prejudice with respect to the joint account. *See* ECF 89; ECF 91, at 6. Despite having the benefit of Judge Griggsby's blunt assessment of his proof, Debtor Barch's renewed motion still provides woefully insufficient information on the transactions in the joint account.

In the underlying bankruptcy case in *In re Titus*, which the district court and Third Circuit ultimately affirmed, the bankruptcy court found that, in order to determine the liability of the funds in the joint account at issue, it had to consider the transactions and balance of the account for the entire time period between the date the judgment was entered against the debtor and the date the

order for relief was entered in the debtor's bankruptcy proceeding. *In re Titus*, 566 B.R. 755, 762–64 (Bankr. W.D. Pa. 2017), *aff'd*, 916 F.3d 293 (3d Cir. 2019) (intermediate affirming subsequent history omitted). Here, the District Court in Colorado entered judgment against Debtor Barch in September 2022, and the judgment was registered with this Court on October 31, 2022. *See* ECF 1. The judgment is still outstanding, and there has been no order for relief entered in a bankruptcy proceeding nor any analogous event. Despite this, Debtor Barch provides only one single month of transactions from the joint account, from October 2022 to November 2022.[6] ECF 91-3, at 1–3.

It seems that Debtor Barch would have the Court look at this single month of transactions and conclude that, since Debtor Barch claims that most of the transactions from the joint account were "necessary household expenses," the entire account must be exempt for the entire period and into perpetuity. *See* ECF 91, at 2 ("Since the vast majority of disbursements from the Joint Account were for necessary household expenses, the Joint Account is also exempt from judgment enforcement . . . ."). Debtor Barch offers no authority to endorse such a process, and this process is a far cry from the analysis in *In re Titus*.

In order to demonstrate that the exemption in CJP § 11-603(a) applies to the joint account in this case, Debtor Barch must provide significantly more information. To be abundantly clear, under the process outlined in *In re Titus*, Debtor Barch must provide: (1) the starting balance of the joint account as of the date the judgment was entered against him; (2) the source of all deposits

---

[6] The choice of this particular month as a representative sample month is doubly vexing, as Maryland precedent is clear that "'the entry date of judgment giving rise to the garnishment' found in [CJP] § 11-603 is the date on which a clerk of court enters the foreign judgment into [this Court's system] under Rule 2-601." *Stevenson v. Edgefield Holdings, LLC*, 225 A.3d 85, 90 (Md. App. 2020). The transactions listed from the joint account span from October 27, 2022, through November 25, 2022. ECF 91-3, at 1–3. Because the judgment was registered with this Court on October 31, 2022, several days of transactions provided are not within the relevant window of time for this analysis.

9

into the joint account in the intervening period; and (3) the subject of all purchases and withdrawals from the account. *See In re Titus*, 916 F.3d at 302–305 (discussing calculation of exemption amount). This information should be provided to the Court as a table or spreadsheet. Only with such information can this Court enter a judgment based upon the process outlined in *In re Titus*. Additionally, simply stating that an expenditure was a "necessary household expense" is not sufficient to prove that that transaction should be exempt. Instead, Debtor Barch must provide authority and argument to support his assertions that specific purchases were, in fact, necessities. Finally, the Court warns Debtor Barch that, though this motion is denied without prejudice, he will not be given infinite attempts to re-file the same motion.

## IV. CONCLUSION

For the foregoing reasons, Debtors' renewed motion for release of garnished property, ECF 91, is **DENIED** without prejudice.

A separate implementing Order will issue.

Dated: March 13, 2024

/s/
Brendan A. Hurson
United States District Judge