## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAVID BARTCH,

    Plaintiff,

v.

MACKIE BARCH, et al.,

    Defendants.

Civil No. 23-0101-BAH

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Creditor David Joshua Bartch ("Creditor," "Bartch," or "Creditor Bartch") secured a judgment of 6.4 million dollars against Mackie A. Barch ("Bartch" or "Debtor Bartch") and Trellis Holdings, Maryland, Inc. ("Trellis") (collectively, "Debtors") in the District Court for the District of Colorado, which Creditor Bartch now seeks to enforce in this Court. *See* ECF 1 (registration of foreign judgment); ECF 3 (notice of amended judgment). Currently pending before the Court is Creditor's motion for release of funds held in the Court Registry. ECF 103. Debtors filed a response in opposition, ECF 104, and Creditor filed a reply, ECF 107. Following a decision from the Tenth Circuit regarding the underlying case in the District of Colorado, both parties filed a notice of the ruling. *See* ECFs 115 (Creditor Bartch); ECF 116 (Debtors Barch and Trellis). Creditor additionally filed a request for a hearing on the issue. ECF 117. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below,

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Creditor's motion for release of funds is **GRANTED**. Creditor's request for a hearing is **DENIED AS MOOT**.

## I.   BACKGROUND

In September 2022, Judge R. Brooke Jackson of the United States District Court for the District of Colorado found that Debtors had breached a contract with Creditor and ordered 6.4 million dollars in damages against Debtors. ECF 1-1; *Bartch v. Barch*, Civ. No. 18-03016, 2022 WL 4092689, at *6 (D. Colo. Sept. 7, 2022) ("*Bartch I*"). Judge Jackson later amended the judgment to award post-judgment interest to Creditor. ECF 3-1; *Barch v. Barch*,[2] Civ. No. 18-03016, 2022 WL 16924003, at *4 (D. Colo. Nov. 14, 2022) ("*Barch* II").[3] The underlying dispute between the parties in that case concerned the ownership of Culta,[4] a cannabis retailer licensed under Maryland state law. *Bartch I*, 2022 WL 4092689, at *1–2. Creditor filed a registration of the District of Colorado's judgment in this Court on October 31, 2022, ECF 1, and filed the amended judgment awarding Creditor post-judgment interest on November 23, 2022, ECF 3.

On May 16, 2023, Judge Griggsby[5] issued a charging order against Debtor Trellis's membership interest in Culta, entitling Creditor "to receive any and all distributions now due or

---

[2] In some of the post-judgment proceedings in the Colorado case, the "t" in Creditor Bartch's name is omitted in the case name.

[3] Debtors have since filed multiple motions for reconsideration or relief from judgment, all of which have been denied. *Barch v. Barch*, Civ. No. 18-03016, 2024 WL 480625, at *1–4 (D. Colo. Feb. 1, 2024) (misspelling of party names in original) (denying motion to vacate under Federal Rule of Civil Procedure 60(b)(4) based on an argument substantially similar to the one before this Court on the present motion); *Barch v. Barch*, Civ. No. 18-03016, ECF 248 (D. Colo. July 7, 2023) (PACER) (misspelling of party names in original) (denying Debtors' motion for reconsideration).

[4] Culta, though not a party to this motion, is present before this Court in this case as a garnishee. *See* ECFs 14, 15.

[5] Judge Griggsby previously presided over this case. On October 23, 2023, the case was transferred to the undersigned.

that may become due to [Trellis] by virtue of Trellis's interest in Culta," until satisfaction of the judgment. ECF 70, at 1. Debtors filed a motion to vacate the charging order on August 29, 2023. ECF 79. On September 14, 2023, and while the motion to vacate remained pending, Debtors moved to stop an anticipated distribution of $673,257 from Culta to Debtor Trellis which would have been directed to Creditor pursuant to the Court's May 16, 2023 charging order. ECF 84-1, at 2. On September 20, 2023, the parties reached an agreement on the short-term fate of the $673,257 distribution and jointly asked Judge Griggsby to order Culta to "deposit into the Court Registry any distribution that is subject to the [Charging] Order, to be held by the Court pending the resolution of Trellis's Motion to Vacate and any further Order of the Court[.]" ECF 85, at 2. Judge Griggsby granted that request, ECF 86, and the docket reflects that the $673,257 was received by the Court on October 27, 2023. ECF 103, at 2 n.1. On March 5, 2024, the Court denied Debtors' motion to vacate Judge Griggsby's charging order. ECF 97.

Just a few days later, creditors moved for the release of the $673,257 held by the Court, arguing that the parties had stipulated the funds would be released following the Court's decision on Debtors' motion to vacate. ECF 103, at 3 ¶ 10. In response, Debtors originally contended that no order should issue until the Tenth Circuit had issued a ruling on the underlying District of Colorado case, which Debtors had appealed. ECF 104, at 3 ¶ 8. On July 29, 2024, the Tenth Circuit published its ruling, which both affirmed as well as vacated and remanded the district court's prior orders in the case. *See Bartch v. Barch*, 111 F.4th 1043 (10th Cir. 2024). Debtors now argue that because the Tenth Circuit remanded the case for further consideration regarding whether enforcement of the judgment would violate federal law, this Court should "continue to refrain from taking the irreversible step of releasing the funds." ECF 116, at 2 ¶ 6. Creditor

3

responds that the Tenth Circuit ruling left the judgment in place and did not prohibit federal courts from enforcing it. ECF 117, at 3 ¶ 2.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 67, money paid into a court registry "must be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute." Fed. R. Civ. P. 67(b). The relevant portion of 28 U.S.C. § 2042 provides that no money deposited into a court registry "shall be withdrawn except by order of court." Courts have recognized that district courts do not have "carte blanche" to "dispose of deposited funds as [they] see fit" but must disburse the funds "to their rightful owner" and "in accordance with the law." *Alstom Caribe, Inc. v. George P. Reintjes Co.*, 484 F.3d 106, 114 (1st Cir. 2007).

## III.   ANALYSIS

### A.    The Tenth Circuit's Decision in *Bartch v. Barch*

The Tenth Circuit's ruling consolidated two appellate cases into one. *Bartch*, 111 F. 4th at 1052 n.6. The first concerned Debtors' appeal of the Colorado district court's order denying reconsideration of the original judgment.[6] *Id.* at 1053. The second concerned Debtors' appeal of the district court's judgment enforcement order[7], which had directed Debtors to "(1) sell or otherwise monetize their equity in Culta and (2) turn over to [Creditor] the proceeds of any transaction involving their Culta equity . . . .until the judgment is fully satisfied." *Id.* at 1052. The Tenth Circuit affirmed the district court's decision regarding the judgment, letting stand the 6.4

---

[6] Debtors filed the motion for reconsideration of the original judgment on September 5, 2023. The district court denied the motion on February 1, 2024. *See Barch*, 2024 WL 480625, at *1.

[7] The district court issued the enforcement order on June 8, 2023. *See Joshua v. Barch*, Civ. No. 118-03016, 2023 WL 6461052, at *1 (D. Colo. June 8, 2023). The case caption in this action is styled as *Joshua v. Barch* in reference to Creditor Bartch's middle name.

4

million dollar award for Creditor, *id.* at 1054-56, but vacated and remanded the second, the enforcement order requiring the monetization of Debtors' interest in Culta, *id.* at 1056-63.

The decision to vacate and remand the judgment enforcement order rested on the determination that the district court's judgment enforcement order was a form of injunctive relief and therefore subject to public policy considerations. *Bartch*, 111 F. 4th at 1061. As such, the Tenth Circuit raised the question of whether Debtors' compliance with the order would violate the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801–904. *Id.* Recognizing that "the judgment enforcement order would be invalid if it requires [Debtors] to violate public policy," the Tenth Circuit held that the record was not sufficiently established to answer this question and vacated and remanded the judgment enforcement order for further development of the record and for the district court to make additional determinations. *Id.* at 1063.[8] Specifically, the Tenth Circuit panel majority ordered that the trial court should address, among other questions, "whether: (1) The district court effectively ordered [Debtors] to violate federal drug law[,] (2) The order violates public policy[, and] (3) The order is a proper equitable remedy." *Id.* at 1062-63 (footnotes omitted). The latter question "requires consideration of the limits on a federal court's formulation of a judgment enforcement order to facilitate recovery of a money judgment." *Id.* at 1063. The Tenth Circuit did, however, affirm the underlying original judgment, finding that it had not

---

[8] The Tenth Circuit majority explained that this determination is not clear cut in noting that "the judgment enforcement order does not specifically order [Debtors] to engage in marijuana activities that would violate the CSA, but compliance with the order may effectively require them to do so." *Bartch*, 111 F. 4th at 1062. A dissenting opinion by Judge Baldock asked the Tenth Circuit to "recognize Culta for exactly what it is: a criminal racketeering enterprise as defined by federal law" and contending that the contract at the heart of the case should be deemed invalid. *Id.* at 1067 (Baldock, J., dissenting). In Judge Baldock's view, the Tenth Circuit should have "acklowedge[d] the elephant in the room and summarily dispose[d] of [the] matter by remanding to the district court with instructions to dismiss." *Id.*

necessarily required Debtors to pay the 6.4 million dollars in damages "from any particular source." *Id.* at 1055.

B.    Developments in the Colorado Case Since the Tenth Circuit's Ruling[9]

On remand, the Colorado trial court immediately got to work addressing the issues identified by the appellate court by holding a status conference on September 9, 2024. *See* Ct. Minutes for Status Conf., ECF 286, *Bartch v. Barch et al.*, No. 1:18-cv-03016-RBJ. The record reflects that the conference ended with an order requiring the parties to "submit simultaneous briefing . . . on or before October 9, 2024," addressing the Tenth Circuit's questions with any responses to be filed "on or before October 23, 2024." *Id.* The Colorado trial court also addressed Creditor's concern that Debtors may seek to liquidate assets by ordering that "[i]f there are any sales or divestitures by [Debtor] Barch of his interests, or [Debtor] Trellis Holding's interests, then the proceeds must be turned over to [Creditor Bartch]." *Id.* Further, the trial court ordered that "[Debtors] may [not] take any steps to pledge or otherwise encumber their interests in Culta, LLC[.]" *Id.* The record in that case reflects that the parties abided by the trial court's order and timely filed the requested briefs. The matter remains under consideration by the trial court.

C.    The Applicability of the Tenth Circuit's Ruling to Creditor's Motion

Creditor seeks the release of $673,257 levied from Debtors' equity interest in Culta, which Judge Griggsby ordered be put toward satisfying the 6.4 million dollar judgment handed down by the District of Colorado (*see Bartch I*, 2022 WL 4092689, at *6). ECF 70, at 1-2. While the Tenth Circuit decision leaves the underlying judgment against Debtors in place, it specifically vacates

---

[9] The Court may take judicial notice of the course of the litigation in the Colorado trial court as it is a matter of public record. *See* Fed. R. Evid. 201(b)(2); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that courts may "properly take judicial notice of matters of public record").

the district court's method of enforcement with respect to Culta. The Tenth Circuit's analysis of the enforcement order rested on its interpretation of the order's ambiguity as to whether Debtors would have to "rely on Culta's continued CSA-infringing business operations to enable them to sell the equity." *Bartch*, 111 F.4th at 1062. While the Colorado district court's judgment enforcement order was authorized by Colorado state law – and Judge Griggsby issued the charging order pursuant to Maryland law – both are implicated in the Tenth Circuit's public policy analysis, as both address Trellis's equity interest in Culta. The question of whether Debtors may sell their equity interest in Culta to satisfy the judgment without running afoul of the CSA is therefore before the District of Colorado anew.

It bears noting that the Tenth Circuit's opinion perhaps understandably makes no mention of the $673,257 currently held by the Court. Instead, the opinion spoke primarily to the Colorado trial court's command to Debtors "*to sell equity* in a marijuana business" and "turn over the proceeds of *such transaction(s)* to [Creditor] until the judgment is satisfied in full.'" *Id.* at 1061-62 (emphasis added) (citation to the appellate record omitted). The Tenth Circuit also addressed the trial court's command that Debtors "not make any sale or pledge in respect of their Culta equity, and [] not take any other action, that undermines the value of this equity." *Id.* at 1063. Debtors acknowledge as much in arguing that a delay in the distribution of the funds is warranted because, at least at the time of the filing of their response to Creditor's motion to release the funds, the Tenth Circuit had yet to have an opportunity to weigh in on whether the Colorado "federal court had *subject matter jurisdiction* to enter the judgment in this case" and to address whether an order related to "the *ownership interest* of a marijuana company . . . would violate the CSA and be illegal conduct under federal law." ECF 104, at 1, 3 (emphasis added). The Tenth Circuit rejected Debtors' claims that no subject matter jurisdiction existed. *See Bartch*, 111 F. 4th at 1056. And

7

as the Court understands it, the money held by the Court is not tied to a sale of *equity* in Culta; instead being described by Debtors as a "tax distribution," ECF 84-1, at 2, and by the Court as a "distribution," ECF 86, at 2. Thus, the Tenth Circuit did not speak directly to the nature of the $673,257, which was not the product of the sale of any equity in Culta and obviously unrelated to the command not to devalue Debtors' equity in Culta.

On the other hand, there does not appear to be any dispute that the funds at issue originated with Culta, and thus may represent the proceeds of "continued CSA-infringing business operations." *Barrch*, 111 F.4th at 1062. Further, the Tenth Circuit arguably spoke to origins of the $673,257 when it noted in a footnote that it would "highly doubt a district court order telling [Debtor Barch] to rob a bank and turn over the proceeds to satisfy the judgment would survive appellate review." *Bartch*, 111 F.4th at 1063 n.23. While the haul from a bank robbery bears little resemblance to the profits of a highly regulated business operating within the confines of state law, it is reasonable to suggest that the Tenth Circuit ordered the trial court to discern whether public policy is violated by enforcement order that served as the means to force the distribution of any funds, "distributions" included, originating from what it described as Culta's "CSA-infringing business operations." *Id.* at 1062.

This Court has already addressed the bulk of Debtors' arguments in its March 5, 2024 Memorandum Opinion, and won't repeat its analysis here. *See* ECF 100. Suffice to say the Court is persuaded by Creditor's argument that Debtors seek "a backdoor stay of a sister court's judgment." ECF 107, at 2. The funds at issue are not the proceeds of Debtors' sale of any equity in Culta. In fact, the funds bear close resemblance to the garnished portions of wages Culta previously paid to Debtor Barch, the collection of which was never challenged under the public-policy rationale cited by Debtors today. *See* ECF 49, at 2. Nor would release of the funds

8

"necessarily require [Debtors] Mackie and Trellis. . . to *affirmatively* cultivate, process, or sell marijuana" or "abet[] *continued* operations in violation of federal law."[10]    *Bartch*, 111 F.4th at 1062 (emphasis added).

Indeed, the money is already in the Court Registry, and has not been touched or added to since it was deposited in October of 2023. Instead, it is effectively frozen, and is merely passively accruing interest. Debtors continue to owe over 6.4 million dollars to Creditor, a determination that was not upset by the Tenth Circuit's decision. *See Bartch*, 111 F.4th at 1055. And while future rulings by the Colorado trial court may impact the enforcement of the Colorado court's judgment moving forward, this Court sees no justifiable reason to further delay the release of a relatively small portion of those funds held by the Court at the joint request of all parties in anticipation of the resolution of a motion that was decided seven months ago.

---

[10] As the Tenth Circuit noted in its opinion, the central question on remand is whether the court would be "assist[ing] in any way towards carrying out the terms of an illegal contract." *Bartch*, 111 F.4th at 1063 (quoting *Kaiser Steel Corp. v. Mullins*, 45 U.S. 72, 77 (1982)). District courts around the country have routinely confronted the question of how to apply the central tenant of *Kaiser Steel* towards contracts which, at their core, concern the cultivation or distribution of marijuana. Many have articulated that the bright-line rule of *Kaiser Steel* prohibits courts from ordering relief which would "mandate illegal conduct." *Ginsburg v. ICC Holdings, LLC*, No. 3:16-CV-2311-D, 2017 WL 5467688, at *8 (N.D. Tex. Nov. 13, 2017) (quoting *Bassidji v. Goe*, 413 F.3d 928, 937–38 (9th Cir. 2005)); *see also Mann v. Gullickson*, No. 15-cv-03630-MEJ, 2016 WL 6473215, at *7 (N.D. Cal. Nov. 2, 2016) (holding that "even where contracts concern illegal objects, where it is possible for a court to enforce a contract in a way that does not require illegal conduct, the court is not barred from according such relief"); *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 835 (D. Co. 2016) (deciding that an insurance company was not entitled to refrain from paying out a claim filed by a marijuana grower on public policy grounds, as it entered into the policy "of its own will, knowingly and intelligently" and was thus "obligated to comply with its terms or pay damages for having breached it"). The point around which federal courts are coalescing thus seems to be whether an order would require *ongoing* or *future* violations of federal drug law in order to be satisfied. The release of funds already held by the Court would not.

## IV.   CONCLUSION

For the foregoing reasons, Creditor's motion for release of funds is **GRANTED**.
Creditor's request for a hearing is **DENIED AS MOOT**.

A separate implementing Order will issue.

Dated: <u>December 17, 2024</u>                          <u>       /s/       </u>
                                                         Brendan A. Hurson
                                                         United States District Judge

10